**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

TERRY BENSON,                 *

Plaintiff                      *

v                            *          Civil Action No. CCB-19-1521

CORY WALKER, *Case Management Team*,   *

Defendant                   *
                                    ***

## MEMORANDUM OPINION

In response to plaintiff Terry Benson's unverified complaint (ECF No. 1), defendant Cory Walker has filed a motion to dismiss or in the alternative, motion for summary judgment. Plaintiff was provided an opportunity to reply to defendant's motion, and has not done so.[1] Having reviewed the submissions, the court deems a hearing is unnecessary to resolve the issues. Local Rule 105.6 (D. Md. 2018).  For the reasons that follow, defendant's motion (ECF No. 20) will be construed as a motion for summary judgment and granted.

## BACKGROUND

Benson is an inmate incarcerated at Western Correctional Institution (WCI).  Benson claims that on April 14, 2018, he was assaulted by "the bloods" for failing to carry out a hit on another inmate.  He does not allege he sustained any injury and provides no other details in the complaint. Benson states he was placed on administrative segregation pending further investigation of his allegations of assault.  Complaint, ECF No. 1 at 4.

On May 14, 2018, officers searched his cell where they discovered several weapons. Benson claims the weapons did not belong to him, but he was nevertheless issued an infraction and moved to disciplinary segregation with "no further investigation." *Id.*  He alleges the case

---

[1]      Benson was informed by the court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to defendant's motion could result in dismissal of the complaint. ECF No. 21.

management team informed him that due to the significant number of weapons discovered in his cell, "they found no reason or need to keep" him on administrative segregation "because it looked like [he] was trying to carry out favors for another organization." *Id.* Benson states he has been on disciplinary segregation for 15 months for refusing housing assignments and admits he will not accept the assignments because he fears for his safety. He has requested to be transferred and wants to speak with case management. He alleges that despite his requests, case management has not met with him about his situation. *Id.* As relief, Benson is requesting an order requiring his transfer to another facility and an award of $5,000 in damages. *Id.* at 3.

Walker, who is an acting correctional case manager, supports his dispositive motion with his declaration and verified exhibits from Benson's prison record. Walker provides the following information:

On March 15, 2018, Benson was in the lobby of Housing Unit 3 at WCI, where he was allegedly assaulted by another inmate. Walker Declaration, ECF No. 20-2 at ¶ 4. Benson claimed the hit was carried out by a member of the "Bloods" prison gang because he had failed to execute a hit at the Eastern Correctional Institution (ECI). *Id.*[2] Benson was placed on administrative segregation pending investigation of his assault claim. Case File Records, ECF No. 20-3 at 2–5; Michael Yates Declaration, Case Management Supervisor, ECF No. 20-3 at 1 (certifying records).

Lieutenant Pritts was assigned to investigate Benson's assault allegations. On April 30, 2018, Pritts concluded his investigation and determined that there was no credible danger to Benson. Benson remained in administrative segregation for psychological reasons at the direction of mental health staff. ECF No. 20-2 at ¶ 6; ECF No. 20-3 at 6–7.

---

[2]     While housed at ECI, Benson had filed a Prison Rape Elimination Act claim against another inmate and feared that he would be assaulted as a result. ECF No. 20-2 at ¶ 5.

On May 14, 2018, officers conducting a routine search found 6 weapons in Benson's cell. ECF No. 20-3 at 9, 13, 14.  Benson was subsequently charged with four inmate rule violations, including possession of a weapon in violation of Rule 105.  ECF No. 20-3 at 9.  On May 18, 2018, Benson was removed from administrative segregation after prison mental health staff determined there was no longer any mental health concerns to support his continued assignment to administrative segregation.[3]  ECF No. 20-2 at ¶ 6; ECF No. 20-3 at 8.

At the hearing for the inmate rule violations on June 1, 2018, Benson voluntarily waived his rights and pleaded guilty to all rule violation charges against him,[4] including possession of a weapon.  ECF No. 20-3 at 20–22.  The hearing officer imposed 180 days of disciplinary segregation, revoked 120 diminution credits, and cancelled Benson's visiting privileges for an indefinite amount of time.  *Id.*

Benson completed his 180-day disciplinary segregation term in November of 2018.  ECF 20-2 at ¶ 13.  Walker explains that alternatives to protective custody (PC) housing include relocating an inmate to another tier or housing unit.  When Benson was offered these alternatives, he refused them.  *Id.* at ¶ 12.  In accordance with institutional security procedures, Benson was assigned to a general population housing cell because he provided no information to corroborate his claims of danger to his safety justifying a move to protective custody or other segregated housing.  *Id.* at ¶ 13.  Benson has since refused nine consecutive housing assignments.  Each refusal constitutes a rule violation, and as a result, Benson has been

---

[3]    The May 14, 2018, notice of inmate rule violation recommended administrative segregation pending formal hearing (ECF 20-3 at 9), which was approved on May 14, 2018, by the shift commander Marc Whiteside, (ECF 20-3 at 11).  It is not clear how this relates to Benson's removal from administrative segregation based on mental health considerations on May 18, 2018.

[4]    Benson was also charged with disobeying an order and refusing a housing assignment stemming from an unrelated incident on May 29, 2019.  ECF No. 20-3 at 15–16, 20.

sanctioned with a total of 11 and one-half months of disciplinary segregation.   *Id.*; Rule Violation Summary, ECF No. 20-3 at 41.

Benson filed an Administrative Remedy Procedure (ARP) complaint, WCI-845-19, dated May 10, 2019,[5] in which he complained that the housing unit manager would not meet with him to discuss his housing concerns.  ECF No. 20-3 at 28.  The ARP complaint was investigated by WCI staff who could not substantiate his claims of threats because he provided no evidence.  *Id.* at 29–31.  Lieutenant J. Smith, Special Confinement Unit Manager, provided a written statement for the ARP investigation, indicating he had interviewed Benson several times in the previous months about his housing, but Benson provided no reason why he would not accept general prison population housing.  *Id.* at 32.

Benson had previously requested PC housing.  ECF No 20-2 ¶ 9; ECF No. 20-3 at 40. Walker explains that in accordance with institutional policy, assignment to PC would not be appropriate unless Benson provided specific information about a threat, such as the names of the inmates he claims were responsible for a prior alleged assault, and that information was investigated and determined credible.  ECF No. 20-2 at ¶ 9.  An inmate's general claim of safety concerns does not warrant transfer to another correctional facility.  *Id.*  Walker states that Benson was advised of these institutional policies and did not provide any specific details to support his safety concerns, until September of 2019, when Benson first identified individuals he considered a danger to him.  *Id.* ¶¶ 9, 10.

Prior to September of 2019, Benson refused to name his enemies or identify inmates who posed a danger to him, or to otherwise cooperate in investigations into his claim that he was in

---

[5]     The ARP complaint is dated April 10, 2019, by Benson, but it appears the date should be May 10, 2019.  In the complaint, Benson references previous attempts to speak to Lt. Smith in April and May 2019, the date "5-10-19" is written at the top of the complaint, and the complaint was received by the ARP office on May 13, 2019.  ECF 20-3 at 28.

danger of harm.   ECF No. 20-2 at ¶ 8.   Benson has not been determined to be a validated member of a prison gang.  *Id*.; ECF No. 20-3 at 42.

The information Benson provided in September 2019[6] was investigated.  ECF 20-2 at ¶ 10.   On October 23, 2019, Walker met with Benson to discuss his safety concerns.   Benson cooperated with the investigation and his claims were verified as credible.  *Id.*  Although Benson did not request placing any inmates on his Enemy List, Walker has the authority to ensure individuals who are determined to be credible threats to Benson's safety will not be housed with him. *Id.*

Benson and Walker met again on November 20, 2019, to discuss safety concerns.  *Id*. at ¶ 11.   During this meeting, Benson provided "completely new information . . . regarding the context of his concern for his safety that he had not raised before that will require substantial further investigation in order to verify the substance of his new information."  *Id*.  Walker adds "this new information is potentially very serious in nature and for security purposes cannot be publicly disclosed."  *Id*.  If the information is substantiated, it may provide a basis to place Benson in PC housing.   While the matter is under investigation, Benson will be assigned to administrative segregation.  *Id.*

Walker denies refusing to meet with Benson.  *Id*. at ¶ 14.   Institutional case management policy provides that inmates in disciplinary segregation for more than 30 days have the opportunity to speak with a case manager during their regular monthly rounds of the disciplinary segregation housing units.  *Id.*   From June of 2018 to May of 2019, when Benson filed this lawsuit, he has served four different disciplinary segregation sentences over 30 days in length.  *Id.*   Benson met with case management staff on April 23, 2019, October 23, 2019, and

---

[6]     The precise nature of this information is not specified in the record.

November 20, 2019 to discuss his safety concerns.  ECF No. 20-2 at ¶¶ 10, 11; ECF No. 20-3  at

43.

## STANDARD OF REVIEW

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented

to and not excluded by the court, the motion must be treated as one for summary judgment under

Rule 56."  Fed. R. Civ. P. 12(d).  In order for the court to convert a motion to dismiss into one

for summary judgment, the parties must have had "a reasonable opportunity to present all the

material that is pertinent to the motion."  *Id.*  Further, the nonmoving party must have adequate

notice that the motion may be converted.  Notice is adequate where, as here, the caption of the

pleading provides that it is alternatively a motion for summary judgment.  *Laughlin v. Metro.*

*Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).  Because the court considers

matters outside of the pleadings (Walker's declaration and case records) and because Benson

was given adequate notice and a reasonable opportunity to present pertinent material, the

defendant's motion will be treated as one for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted

"if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphases added).  "A dispute is

genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Libertarian Party*

*of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*,

673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit

under the governing law.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment[.]"  *Anderson*,

477 U.S. at 247–48.   The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015).   At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial."   *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

Against this standard, the court recognizes that pleadings filed by pro se litigants should be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   A court, however, cannot assume the existence of a genuine issue of material fact where none exists.   *See* Fed. R. Civ. P. 56(c).

## DISCUSSION

Under the Eighth Amendment prison officials are required to "take reasonable measures to guarantee the safety of inmates," including protecting them "from violence at the hands of other prisoners."   *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citations omitted); *see also Makdessi v. Fields,* 789 F.3d 126, 132 (4th Cir. 2015).   "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer,* 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

To establish a failure to protect claim, a prisoner must make two showings: first, that he suffered significant injury or was "'incarcerated under conditions posing a substantial risk of serious harm;'" and second, that the prison official at issue had a "'sufficiently culpable state of

mind.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 834).

Meeting the first part of the inquiry requires the plaintiff to "establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury," *Danser v Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014) (internal quotation marks omitted), or a substantial risk thereof, *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013). *See also Farmer,* 511 U.S. at 834. Actual knowledge of a substantial risk does not alone impose liability. Where prison officials respond reasonably to a risk, they may be found free of liability. *Farmer,* 511 U.S. at 844. Ultimately, "'the test is whether the [prison officials] know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'" *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

Benson fails to assert facts to suggest that Walker, or any other correctional staff member, had knowledge of a specific risk of harm to him and callously disregarded the risk. To the contrary, when Benson reported the alleged assault on April 14, 2018, he was placed on administrative segregation the same day and an investigation was initiated. Benson provided no specific information about his alleged assailants, and the investigation was concluded. Walker denies refusing to meet with Benson, and provides verified records showing he met with him on several occasions to discuss his safety concerns. After Benson provided specific information to substantiate his safety concerns in September of 2019, another investigation was initiated, and Benson was placed on administrative segregation pending investigation. The record before the court does not demonstrate that Walker knew of a serious risk of danger to Benson's safety and failed to respond reasonably to that risk. Consequently, the requisite deliberate difference to

support an Eighth Amendment failure to protect claim has not been established. There is no genuine issue of material fact in dispute and summary judgment will be granted in favor of defendant.[7]

To the extent Benson intended to raise a due process claim in connection with his prison disciplinary proceedings because the weapons found in his cell did not belong to him, the claim fails. In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits, which is the case here, the inmate is entitled to certain due process protections. *Wolff v. McDonnell,* 418 U.S. 539, 571–72 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Id.* at 563–66. Due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980).

Benson received notice of the charges against him and subsequently waived his hearing rights and most appeal rights by entering a guilty plea to the charges against him. ECF No. 20-3 at 20–23. The undisputed facts do not support a viable due process claim regarding the disciplinary proceedings.

Similarly, to the extent Benson asserts a violation of his due process rights based on his assignment to disciplinary or administrative segregation, the claim also fails. Assignment to

---

[7]     If it is Benson's intent to request preliminary injunctive relief to effectuate his transfer to another facility, for reasons set forth in this memorandum, he has not shown a likelihood of success on the merits of his claim to sustain a request for such relief. See *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009), vacated on other grounds by 559 U.S. 1089 (2010), (stating that a party seeking a preliminary injunction or temporary restraining order must establish all the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) that the injunction is in the public interest).

administrative segregation ordinarily does not create an atypical and significant hardship.  *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (holding that administrative segregation is part of the ordinary incidents of prison life).  In *Sandin v. Conner,* 515 U.S. 472, 486 (1995), the Supreme Court held that an inmate's assignment to disciplinary segregation, which did not affect the duration of the prison sentence, did not present the type of "atypical, significant deprivation" that implicates a constitutional liberty interest giving rise to due process protections, as "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody."   Likewise, Benson's placement on disciplinary segregation did not affect the duration of his sentence, nor was it an atypical and significant deprivation implicating his constitutional right to due process.

**CONCLUSION**

For the foregoing reasons, the court will grant defendant's motion for summary judgment.  A separate order follows.

4/29/20                                          /S/
_____              _____
Date                                          Catherine C. Blake
                                                   United States District Judge